**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIMBERLY BLAIR OLANIYI,** | § | |
| **Individually and as Representative of the** | § | |
| **ESTATE OF MICHAEL BLAIR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **C.A.** _____ |
| | § | |
| **DEPUTY SHERIFF T. MANGUM;** | § | |
| **DEPUTY SHERIFF R. HARTFIELD and** | § | |
| **DEPUTY SHERIFF SGT. J. MOORE,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

Now Comes KIMBERLY BLAIR OLANIYI, Individually as Wrongful Death Beneficiary and Survivor of Michael Blair, Deceased, and as Representative of the Estate of Michael Blair, Deceased, Plaintiff herein, complaining of Deputy Sheriff Tully Mangum, Deputy Sheriff R. Hartfield, and Deputy Sheriff Sergeant J. Moore, Defendants herein, and for cause of action would respectfully shows as follows:

### I.  JURISDICTION AND VENUE

A.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (a)(3)-(4), and 28 U.S.C. §1367; 42 U.S.C. §1983 (Section 1983). The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the 4th Amendment of the U.S. Constitution, as made applicable to the States through the 14th Amendment, and by the Civil Rights Act of 1964, and 42 U.S.C. §1983 and §1985,

ensuring due process, and providing for the equal protection and rights of all persons in every state and territory within the jurisdiction of the United States.

B.     This Court has personal jurisdiction over parties because all of the parties reside or exist within the State of Texas.

C.     Venue properly lies in the Houston Division of the Southern District of Texas pursuant to the general venue statute 28 U.S.C. §1391(b).

## II.     PARTIES AND SERVICE

A.     Plaintiff, KIMBERLY BLAIR OLANIYI, is an individual who is a citizen of the United States formerly residing in Harris County, Texas.   As a parent of Michael Blair, Deceased, she is wrongful death beneficiary and presumptive heir of the Estate of Michael Blair. She is a citizen of the United States.  Michael Blair, Deceased, was at all times a citizen of the United States, and died intestate.  This lawsuit is brought by Kimberly Blair Olaniyi as wrongful death beneficiary, presumptive heir and as representative of the Estate of Michael Blair pursuant to Texas Probate Code §37 and §38(a)(2). No administration of the estate of Michael Blair is required.

B.     **Defendant, Deputy Sheriff Tully Mangum**, is an individual employed by Fort Bend County as a Deputy of the Fort Bend County Sheriff's Office.  He is sued in his "personal capacity, acting under color of law".   Defendant may be served with process at **Fort Bend County Sheriff's Department, 1410 Williams Way Boulevard, Richmond, Texas 77469.** Service on Defendant is hereby requested.

C.     **Defendant, Deputy Sheriff Robert Hartfield**, is an individual employed by Fort Bend County as a Deputy of the Fort Bend County Sheriff's Office.  He is sued in his "personal capacity, acting under color of law".   Defendant may be served with process at **Fort Bend**

County Sheriff's Department, **1410 Williams Way Boulevard, Richmond, Texas 77469.**
Service on Defendant is hereby requested.

D.  **Defendant, Deputy Sheriff Sgt. John J. Moore**, is an individual employed by
Fort Bend County as a Deputy of the Fort Bend County Sheriff's Office.  He is sued in his
"personal capacity, acting under color of law".  Defendant may be served with process at **Fort
Bend County Sheriff's Department, 1410 Williams Way Boulevard, Richmond, Texas
77469.**  Service on Defendant is hereby requested.

### III.  SUMMARY OF THE CASE

A.  On November 4, 2013, KIMBERLY OLANIYI ("Olaniyi") called Psychological
Services to assist her in removing her schizophrenic son, Michael Blair ("Blair") who had locked
himself in the restroom for four hours in their Richmond, Texas home. Psychological services
encouraged Olaniyi to call the Fort Bend County Sheriff's office. Olaniyi followed the
recommendations and called the Sherriff's office.

B.  Deputy Tully Mangum ("Mangum"), Deputy Robert Hartfield ("Hartfield") and
Sgt. J. Moore ("Moore") arrived at the scene.  Mangum took over the scene and banged on the
door of the bathroom three times and identified himself as a sheriff and claimed he was there to
"help" Michael Blair. Mangum then forced open the bathroom door and had Hartfield taze Blair.
Olaniyi screamed, "I didn't call you to kill my son." Mangum then ordered the family to leave
the house to remain beyond the view of the activities of the deputies. Blair's Grandmother and
her nurse aide remained in the house during the entire incident.

C.  Impatiently, Mangum then kicked open the door and stood within two inches of
Michael as Michael was reclining in the bathtub reacting to having been tazed. Magnum again
claimed he was not there to hurt Michael. No hostage negotiator or person with experience in de-

escalation of the mentally ill was ever called to the scene. No de-escalation techniques were ever used. Mangum did not follow the required procedures of using voice and conduct, avoiding direct confrontation, to help and not hurt the mentally ill person and to avoid approaching the person until after some rapport was established.  Mangum failed to avoid rushing Blair and did not adopt a non-confrontational stance with Blair, with the goal of calming Blair and transporting him to a facility where he could obtain care and treatment for his mental illness.  Instead of diffusing the situation as police protocols should have required, Mangum progressively became louder and more agitated, causing Blair to become more agitated and distressed; and instead of diffusing the situation, Mangum escalated the situation into an altercation in which Mangum used excessive force followed by unnecessary lethal force.

D.     Deputy Mangum turned his back to exit the bathroom, and suddenly exclaimed, "He's got a knife" when no knife existed. Blair then replied, "What f-cking knife?" Videotape surveillance of the events reveal there was no knife. Deputy Magnum then orders Sgt. Moore to taze Blair. Blair reacts to the tazing by trembling, shaking and convulsing involuntarily and falling into the bathtub with his hands plainly visible and empty.  Blair then stood up in the bathtub, still shaking from being tazed.  As he stood up in the bathtub, Magnum immediately opened fired and put a round directly into the center of Blair's forehead just above his eyebrows. Mangum then fired five more gunshots to Blair's head and the balance of the gunshots totaling eleven (11) entered Blair's thighs. Mangum was supposedly trained to shoot center mass; but instead, shot Blair six times in the head with the clear goal of ending the life of Blair. Once Blair is dead, Mangum then moves Blair's dead body outside the door, to make it appear that Blair had charged him and then Deputy Mangum planted a knife on the body of Blair in an attempt to corroborate his version of events and create the appearance that the killing of Blair was justified.

In moving the body, Mangum destroyed the integrity of the crime scene. Deputy Mangum placed handcuffs on Blair's dead corpse.  The County Coroner's office ruled Blair's death a homicide. Videotape of the event show the death of Blair was an intentional, unprovoked and unjustified killing of a human being.

       E.      Deputy Mangum and each officer wrote affidavits the night of the incident with the aid of an attorney for Texas Municipal League. The officers were unaware that a video of their misconduct existed when they wrote the affidavits. The objective video contradicts the sworn affidavits depicting the events prepared by the deputies. Mangum was never charged with murder, involuntary manslaughter, voluntary manslaughter or any specific criminal offense recognized in the Texas Penal Code for causing the death of Michael Blair.  The case was presented to a Grand Jury without any charge and Mangum was no-billed for a non-crime, any and all offenses relating to the shooting of Michael Blair. Deputy Mangum never testified before the Fort Bend County Grand Jury and has never had to account for his conduct.

       F.      Even after the video of the event was provided to the District Attorney's office, Mangum was not charged with any criminal offense. The video although verified as accurate was referred to by a District Attorney as, the "so-called video". In fact, Deputy Mangum and his representative were allowed to reply and give (in an email) input in the District Attorney's decision to not charge Mangum, even after a second Grand Jury proceeding was held. Obviously, Mangum and the Fort Bend County District Attorney suggested to the Grand Jury that no charges be filed.  No efforts were made by the Office of the Fort Bend County District Attorney to show the Grand Jury the inconsistencies in the affidavits of the deputies revealed by the video of the incident.   Mangum has been involved in prior homicides under similar

circumstances.   The videographer, Steven Savage, however, was charged with the crime of tampering with evidence and no-billed.

## IV.    NATURE OF THE CASE

This is a wrongful death and survival action brought by Plaintiff KIMBERLY BLAIR OLANIYI, who is the Mother of Michael Blair, Deceased.  Pursuant to 42 U.S.C. §1983 and §1985 Olaniyi is seeking damages and redress for violations of the constitutionally-protected rights of her beloved son, Michael Blair, Deceased.  Specifically, Plaintiff alleges that Mangum, Moore and Hartfield violated Michael Blair's rights under the 4th Amendment of the U.S. Constitution to be secure in his person and be free of excessive force and 14th Amendment rights to life and liberty and due process.

## V.   FACTUAL BACKGROUND

A.    On or about November 4, 2013 around 5:45 p.m., four deputies with the Fort Bend Sheriff's Department – acting under color of law, Patrol Deputy Tully Mangum,  Patrol Deputy Robert Hartfield, and Patrol Sgt. John J. Moore, Jr., responded to a 911 call placed by Kimberly Blair Olaniyi, the mother of Michael Blair, Deceased, requesting police assistance at the home of Mrs. Blair Olaniyi's mother, located on the 7000 block of Dawn Bloom Lane in the Sunrise Meadow Subdivision of the City of Richmond, Fort Bend County, Texas.   Each of the four Deputies, Mangum, Goodrich, Hartfield, and Moore, identified themselves as Fort Bend County Sheriff Deputies and wore uniforms consistent with those worn by Fort Bend County Sheriff Deputies.

B.    Kimberly Blair Olaniyi called first a Mental Health Counselor  and then  911, as directed by the Mental Health Counselor, to request assistance for Michael Blair who was mentally ill, informing '911' that Blair had been locked in the bathroom since 1:00 PM, crying

uncontrollably, not responding and talking to himself.  She informed '911' that Blair had been diagnosed with "mild schizophrenia", that she was concerned that he might hurt himself, and did not know if he had any weapons.  The family was concerned that Michael Blair may have been suffering from suicidal ideations and thoughts, but at the time of the calling he posed a risk of harm only to himself—not to others.

  C. Kimberly Blair Olaniyi called 911 in the hope of getting Michael Blair to get out from the bathroom and so that he could be taken to a medical facility where he could possibly receive psychiatric attention and treatment.  Mrs. Blair Olaniyi believed it would be necessary to 'knock down the door to get him out'.

  D. When the Fort Bend County Sheriff Deputies arrived at the home, Kimberly Blair Olaniyi, Stephen Savage (Michael Blair's uncle) and other family members specifically informed the Deputies, to include Deputy Sheriff Tully Mangum, acting under color of law, that Blair had a long history of mentally illness.  The deputies were again informed that Blair had been diagnosed paranoid schizophrenic, and that they believed Blair had not taken his medications. In addition, they were informed that, in recent days, Blair had become increasingly depressed, distant and agitated.  The family expressed to the deputies their concerns and stressed that Blair had not posed any risk of harm to others that morning or afternoon but only to himself – especially in light of the fact that he had barricaded himself in and was alone in the bathroom of the home.

  E. The Deputies, to include Deputy Sheriff Tully Mangum and Defendant Deputy Robert Hartfield, acting under color of law, expressly indicated that they understood Blair's mental illness/condition and understood that Blair had not engaged in any criminal or violent act, and that Blair did not pose a threat to others; in fact, all Defendant Deputies – Mangum,

Hartfield, and Moore – have  indicated that they understood that they had been called out to the house because the family feared for the safety and welfare of Blair who appeared to be suicidal. No deputy then or after ever informed the family that they were going to arrest/seize or retrain Blair or that they were going to forcibly take him to a psychiatric facility.  The training of the officers, to specifically include Mangum, Hartfield and Moore included Crisis Intervention Training (TCLOE #3841) which expressly required that the use of force, to include deadly force, be used as a last resort, that deputies/officers deescalate situations by use of voice and conduct, avoid direct confrontation, to be non-confrontational, not treat mentally ill persons as 'hardened criminals', to help and not hurt, avoid techniques employed to take a suspect into custody which serve 'to escalate a contact with the mentally ill into violence', to avoid approaching the person until after a degree of rapport has been established, to not rush the person or crowd his personal space, to – if in the event such a person is waving his fists, or a knife or yelling – the officer is to adopt a non-confrontational stance with the subject, with the goal of obtaining care and treatment for the mentally ill person.

F.      Despite the training of Mangum, Hartfield and Moore, to specifically include Crisis Intervention Training (TCLOE #3841), their knowledge and understanding that Michael Blair had locked himself in the bathroom, that Blair was schizophrenic, that Michael Blair was experiencing suicidal thoughts, that Blair posed only a threat to himself; despite Fort Bend Sheriff's Office General Orders #11 and #12, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment and use of deadly force, Mangum, Hartfield and Moore  acted in direct contravention of their training and policies, escalated the situation, disregarded their training, disregarded Fort Bend Sheriff's Office's Taser policy, Disregarded Fort Bend Sheriff's Office

use of force policy and disregarded Fort Bend Sheriff's Office's use of deadly force policy in the tasing, shooting, seizing, and killing of Blair as set forth herein.

G.     Prior to the Defendants' arrival, and concerned about the use of law enforcement Decedent's uncle, Steven Savage, positioned his Apple iPhone in the bedroom across from the bathroom to record the events, turning the phone on 'recording just in case'.  The iPhone was positioned in a manner to capture digitally – audibly and visually – the conduct and activities of the deputies and the events that took place, outside of the view of the family outside and inside the bathroom inside the home. (Supplemental Exhibit – attached and provided)  The affidavits of Defendant Deputies Mangum, Hartfield and Moore were created prior to Defendants having learned of the existence of the iPhone digital recording.

H.     Defendant Tully Mangum began the event by gently knocking on the door and calling Michael Blair's name and saying words to the effect:  "Hey Michael, this is Tully with the Sheriff's Office…what's going on?"  (02:33-02:34 mark).  Mangum then asks Blair "to get dressed and come on out that he needed to talk to him real quick", or words to that effect. (02:44 mark).  Inconsistent with the TCLOSE training that he be patient, be non-confrontational, de-escalate the situation, to not approach the subject until a rapport is established, not to rush the person or crowd the person's personal space, after 20 seconds of this request Deputy Sheriff Tully Mangum and Deputy Robert Hartfield violated their training and Fort Bend Sheriff's Office use of force policies.  Each, acting under color of law, escalated the situation with Defendant Mangum (witnessed by Defendant Hartfield) saying: "**If you don't hurry up and open the door we are going to kick it in**."  (03:09-03:13 mark).  No more than 9 seconds later, Deputy Sheriff Tully Mangum, acting under color of law – witnessed by Defendant Hartfield, escalated the situation further and saying: "**We will kick in the door…I don't want to do it…**"

(03:22 – 03:27 mark).   No more than 25 seconds later, Defendant Mangum – witnessed by Defendant Hartfield - further escalates the situation and says: "**We want to do this the easy way don't make us do this the hard way**."  (03:52 – 04:02 mark).

I.      Almost 2 minutes after entering the residence and not seeing Blair, at approximately 04:13 mark, 11 seconds later after the above statement "**We want to do this the easy way don't make us do this the hard way**", Defendant Mangum, acting under color of law, began to forcefully bang on the bathroom door while Blair continued to remain alone in the locked bathroom.  Approximately 04:26 mark, 13 seconds later, it is Defendant Mangum, acting under color of law, who turns the door knob and partially opens the door (no more than 1" – 2" open), and, shouts three (3) times 'he's got a knife', this being said while Blair is not visible to the digital recording and could not possibly be visible to Deputy Mangum or Deputy Hartfield. From the vantage of Defendant Tully Mangum, he is far right of the door and the narrow entrance.  It was not possible for Defendant Mangum to see Blair,  let alone see an alleged pocket 6" silver pocket knife through a solid door.  Defendant Mangum, acting under color of law, then steps sideways to his and the camera's right, steps out of camera range and Blair, then steps back into camera range into the bedroom across from bathroom where the iPhone is located and is seen placing his hand on his weapon (while the door is closed). Blair – from the inside of the bathroom – closes the bathroom door.

J.      Defendant Tully Mangum, in his affidavit to the Fort Bend Sheriff's Department and to the Texas Ranger, represents the following:  (1) Blair partially opened the door; (2) that he saw Blair holding a knife directly in front of him with the point up; (3) that he does not know how the door opened, but he did not open it; (4) that Blair was covered with blood and that blood was all over Blair's shirt; and (5) that he saw Blair cutting himself.  The iPhone video shows

Defendant Mangum to the far right of the 2-inch opening with Blair totally obscured and not visible to Defendant Mangum at all. Many of these sworn statements by Mangum are simply false.

      K.    At the time Defendant Tully Mangum made these representations, he was unaware that the events had been recorded on Savage's iPhone.  The digital recording shows that Defendant Tully Mangum's representations were false.  It was Defendant Mangum who opened the door – contradicting who opened the door (04:22 mark). and that Defendant Mangum's representation that he did not know who opened the door was false.  In addition, from the vantage point of Defendant Mangum, it was physically impossible for Defendant Mangum to see:  (2) that Blair was holding a knife directly in front of him with the point up; (4) that Blair was covered with blood and that blood was all over Blair's shirt; and (5) that he saw Blair cutting himself.  Clearly, Defendant Mangum was embellishing the events to justify tasing and shooting Blair to death.

      L.    At the 04:28 mark of the video, Defendant Mangum directs and orders the family outside,  kicks the door open (04:32 – 04:33 mark) – and has drawn his service gun, begins shouting at Blair stay down, several times.  This is done in direct violation of Defendant Mangum's training – as witnessed by Defendant Hartfield, who is to the far left of the bathroom door – which provides that an officer was not to rush Blair or crowd his personal space and <u>to remain non-confrontational even where such a person is waving his fists, or a knife or yelling</u>.  It should be noted, at the 04:22 to 04:27 marks, the subject Blair can be seen on the iPhone recording in the bathroom standing in or in front of the bathtub.  There was no knife objectively visible in the hands of Blair and with Blair at least 8 to 10 feet away from both Defendants Mangum and Hartfield.

M.     Defendant Mangum in his affidavit represents that Blair moves toward him and then retreats.  The digital recording does not show this.  (04:34 – 04:35 mark).  Defendant Mangum's statement in his affidavit is further contradicted by the affidavit of Defendant Robert Hartfield who represents that he sees Blair standing next to the tub as confirmed by iPhone recording.

N.     Defendant Hartfield in his affidavit falsely represents that he sees Blair waiving a knife back and forth.  This would appear to be contradicted by Defendant Mangum's affidavit which makes no reference to Blair waiving a knife.  This is further contradicted by the iPhone recording which fails to show any knife, fails to show Blair moving toward Mangum or Hartfield, and fails to show Blair waiving his hands at all.   (04:36 – 04:42 mark) The representations of Defendants Hartfield and Mangum were made without knowledge of the existence of the iPhone recording.   Clearly, Defendants Hartfield and Mangum were embellishing the events to justify tasing and shooting Blair.  However, even if the representations were true, the TCLOSE training for both deputies required that that an officer was not to rush Blair or crowd his personal space and to remain non-confrontational even where such a person is waving his fists, or a knife or yelling.   As such, entry into the bathroom, the ordered tasing of Blair and the further escalation of events by both Defendants Mangum and Hartfield were in violation of their training.

O.     At the 04:42 mark of the iPhone, and at all points prior to this point, Blair had not committed a felony, while in the bathroom he posed no immediate threat to the safety of the officers nor was he a danger to the community, he was not fleeing, was not attempting to escape, had not been told he was subject to arrest or that he was going to be taken into custody, and did not objectively appear to pose a significant threat of death or serious physical injury to anyone in

the house – as viewed from the iPhone video – which would have been authorized by resorted to deadly force as did Defendant Mangum. The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum and/or Hartfield – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which both officer's were aware - would justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.

P.     The iPhone digital recording demonstrates that Defendants Hartfield and Mangum use of force – taser, drawing of weapon and discharge of weapon - were done in clear violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment in that:  (1) the use of the taser was not done for purposes of self defense; (2) in that the use of the taser was not done in defense of a third person; (3) was not done to prevent the escape of Blair who was under arrest from custody (as Blair had never been placed under arrest); (4) was not **used to effect an arrest** of Blair or **to prevent the threatened use of deadly force**; and/or (5) was not **used to control a prisoner** (as Blair was not a prisoner) who poses a threat to a employee or to any other person.

Q.     The iPhone digital recording demonstrates that Defendants Moore and Mangum use of force – taser, drawing of weapon and discharge of weapon - were done in clear violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment in that:  (1) the use of the taser was not done for purposes of self defense; (2) in that the use of the taser was not done in defense of a third person; (3) was not done to prevent the escape of Blair who was under arrest from custody (as Blair had never been placed under arrest); (4) was not **used to effect an arrest** of Blair or **to prevent the threatened use of deadly force**;

and/or (5) was not **used to control a prisoner** (as Blair was not a prisoner) who poses a threat to a employee or to any other person.

R.      The iPhone digital recording demonstrates that Defendants Moore and Mangum use of force – drawing of weapon and discharge of weapon violates Fort Bend Sheriff's Office General Order 12  and Chapter 9 of the Texas Penal Code because Conduct was unjustified where:  (1)  it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum, as such Mangum could not have  reasonably believes the threatened use of deadly force or the use of deadly force was immediately necessary to avoid imminent harm; (2)  it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum  as such there could be no desirability and/or urgency of avoiding the harm which clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct;  and (3) it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum, no legislative purpose to permits  the justification claimed for the conduct because such does not otherwise plainly appear.

S.      Nevertheless, Defendant Mangum brandishes and points his gun - acting under color of law - at Blair.  At the point when Defendant Mangum draws his gun and points his gun at Blair, (04:32  - 04:42 mark) Defendant Mangum – with his finger on the trigger – Blair has not committed any crime, has not touched or pulled away from any deputy, has not been told he is under arrest, is not fleeing, he is not attempted to escape, does not objectively appear to pose a significant threat of death or serious physical injury into to  Deputy Sheriff Tully Mangum or to

Defendants R. Hartfield, and/or J. Moore, Jr., or to any other Deputy Sheriff or to any other third party.

T.       In fact, as seen in the iPhone recording, which has been authenticated by the Fort Bend Sheriff's Office, Fort Bend County Attorney, Fort Bend District Attorney, City of Houston Police Department and FBI as being authentic and unaltered, Blair never attempts to flee, to attempt to escape, to possess a knife or any other weapon and/or to pose a significant threat of death or serious physical injury to anyone.   In fact, Michael Blair appears objectively to be 'schizophrenic' and unarmed in the iPhone recording.

U.       Notwithstanding Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment and the absence of the factors justifying the use of the taser, Defendant Mangum directs Defendant Hartfield to tase Blair.   At 04:42 mark,  where it is objectively clear that:  (1) the use of the taser was not done for purposes of self-defense; (2) in that the use of the taser was not done in defense of a third person; (3) was not done to prevent the escape of Blair who was under arrest from custody (as Blair had never been placed under arrest); (4) was not **used to effect an arrest** of Blair or **to prevent the threatened use of deadly force**; and/or (5) was not **used to control a prisoner** (as Blair was not a prisoner) who poses a threat to a employee or to any other person, Defendant Hartfield, in conjunction with Defendant Mangum, in the absence of the required, which demonstrate that no reasonable deputy/officer in the position of Defendants Mangum and/or Hartfield – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy and Use of Force, and the controlling law – which both officer's were aware - would justified in attempting to arrest, seize and/or  tase Blair.

V.      At the 04:46 mark, Blair can be seen standing in front of or in the tub, at least 10 feet from the officers (as measured by the taser logs).  Contrary to the affidavit statement of Defendant Mangum, Blair's shirt was not 'covered with blood', while there is blood in the 'V neck' area of the shirt.  Blair can be seen to bend down and then to straighten back up, and then to assume a standing/confrontational fighting stance (04:48 mark) but never to charge any Defendant Mangum and/or Defendant Hartfield.  Blair can be seen in the iPhone recording standing with both hands raised to his face in a boxing stance, with closed fists (left hand forward, right hand back) – with no knife apparent.  Defendant Mangum alleges that Blair moves toward him and back, but never goes beyond the bathroom door.  However, the iPhone recording fails to show this.  However, again, even if this were true, Defendants TCLOSE training expressly provides that **where even Blair may be waiving his fists, or a knife or yelling**,  both deputies were required not to rush Blair or crowd his personal space and were <u>to remain non-confrontational even where such a person is waving his fists, or a knife or yelling</u>.   As such, entry into the bathroom, the ordered tasing of Blair and the further escalation of events by both Defendants Mangum and Hartfield were in violation of their training, which establishes that Defendants are not entitled to qualified immunity as no reasonable deputy/officer in the position of Defendants Mangum and/or Hartfield – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy and Use of Force, and the controlling law – which both officer's were aware - would justified in attempting to arrest, seize and/or tase Blair.

W.      Defendant Hartfield alleges, in his affidavit, that he is present and hears Defendant Mangum say repeatedly 'drop the knife, drop the knife', but the iPhone recording shows that this could not be.  At the time Defendant Mangum makes this statement, the iPhone

recording reflects that the statement does not occur until the 05:16 mark, by this time Defendant Hartfield is gone and Defendant Moore is present.  Both Defendants Hartfield and Mangum conspire to the use of taser, deadly force and conspire to cover-up the their violation of TCLOSE training, violation of the policies of the Fort Bend Sheriff's Office Taser Policy and Use of Force and Use of Deadly Force, violation of the controlling law unlawful and unconstitutional use of the taser and deadly force resulting in the unlawful seizure and arrest of Blair, as well as the excessive use of force and wrongful deprivation of Blair's life.

X.      At the 04:56 mark, Defendant Mangum, under color of law, in the continuing escalation, begins to shout at Blair saying, "Don't do it, don't do it".  Between 04:56 and 05:02 marks, Defendant Mangum shouts – at least three (3) times – "I don't want to shoot you. I don't want to shoot you. I don't want to shoot you."   While in the bathroom, it objectively appears that Blair posed no immediate threat to the safety of the officers – Defendant Mangum, Hartfield and Moore – and he was not a danger to the community, as he was not fleeing, was not attempting to escape.  At no time do Defendants Mangum, Hartfield and Moore ever inform Blair he was subject to arrest or that he was going to be taken into custody.  In fact, Blair objectively appears not to pose a significant threat of death or serious physical injury to anyone in the house, to include him – as viewed from the iPhone video. The absence of these factors precludes the use of both force and deadly force consistent with the TCLOSE training, Fort Bend Sheriff's Office Taser, Use of Force and Use of Deadly Force, existing case law and Constitutional Law, precluded tasing and/or the threatening to use of deadly force which, as Defendant Mangum threatened and as witnessed and assisted by Defendants Hartfield and Moore.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum, Hartfield and/or Moore – as objectively viewed – would be

authorized in light of the events they encountered and their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – of which both officers were aware - would justify attempting to arrest, seize, tase, and/or use deadly force with Blair.  As such, none of the deputies are entitled to qualified immunity.

       Y.      At or near 05:03 mark Defendant Moore substitutes for Defendant Hartfield, as Defendant Hartfield is out of tasers.  Defendant Moore begins to tase Blair, who cannot be seen doing anything that constitutes fleeing, or attempting to escape, he is not coming toward or attacking any deputy and he does not objectively appear to poses a significant threat of death or serious physical injury into to Defendant Tully Mangum, Defendant R. Hartfield, or to Defendant J. Moore, Jr., or to any other third party.  In fact, Blair objectively appears not to pose a significant threat of death or serious physical injury to anyone in the house, to include him – as viewed from the iPhone video. The absence of these factors precludes the use of  both force and deadly force consistent with the TCLOSE training, Fort Bend Sheriff's Office Taser, Use of Force and Use of Deadly Force, existing case law and Constitutional Law, precluded tasing and/or the threatened use of deadly force which, Defendant Mangum – as witnessed and assisted by Defendants Moore – threatened . The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum and/or Moore – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which both officer's were aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, none of the deputies are entitled to qualified immunity.

Z.      Despite there being no objective evidence of a crime having been committed by Blair, or that fact that Blair cannot be seen doing anything that constitutes fleeing, or attempting to escape, he is not coming toward or attacking any deputy and he does not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant T. Mangum or to Defendant R. Hartfield, and/or to Defendant J. Moore, Jr., or to any other third party , Defendant Mangum  was considering shooting Blair, who had already drawn his service gun and pointed the gun, while the door was closed door, towards Blair.   Neither Defendant Hartfield nor Defendant Moore can be heard to oppose the use of deadly force by Defendant Mangum  against Blair who is unarmed, not fleeing, not attempting to escape, and did not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant T. Mangum.  Blair cannot be seen doing anything permitting the use of threatened or deadly force by Defendants T. Mangum, R. Hartfield, and/or J. Moore, Jr. in violation of clearly settled law set forth in *Tennessee v. Garner, 471* U.S. 1, 105 S.Ct. 1694, 85 l. Ed. 2d 1 (1985), which provides: 'deadly force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' id., pg. 3.

(1)      Defendant Mangum – under color of law – a sheriff deputy, failed and did not act as a reasonably prudent officer under the totality of the circumstances, as set forth in directing that Blair be tased, in un-holstering his weapon and threatening deadly force, pointing his service gun at Blair and threatening to use deadly force, and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum  – as objectively viewed – would be authorized in light of their TCLOSE training, the

policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(2)      Defendant Mangum – under color of law – a sheriff deputy, acted without probable cause, in violation of his TCLOSE training, in violation of the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force Policy and Use of Deadly Force Policy, the controlling law and controlling Constitutional Law, in directing that Blair be tased, in un-holstering, pointing his service gun at Blair and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(3)      In addition, Defendant Mangum used excessive force and is liable under section 1983, to wit:

(a)      In his tasing threatening to shoot and shooting of Blair;

(b)      Defendant Mangum knew or reasonably should have known he was violating the rights of Blair, his TCLOSE training, the polices of Fort Bend Sheriff's Office regarding taser use, use of force and use of deadly force, as well as Blair's constitutional right not to be subjected to excessive force when he drew his weapon,

pointed his weapon at Blair and ultimately discharged his weapon killing Blair in absence of the factors required to do same, as set forth herein,  the absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum Moore – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity;

(c)      Defendant Mangum failed to take steps to deescalate the situation in light of Blair's known mental instability, as required by his Crisis Intervention Training (TCLOSE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity; and,

(d)      Defendant Mangum knew or reasonably should have known he was violating the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law, the rights of Blair as clearly established by case law and the United States Constitution, not to be subjected to excessive force when he tased Blair, brandished his fire arm, shot Blair and shot Blair to death (killing Blair), without probable cause, in contravention to his Crisis Intervention Training (TCLOSE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of

Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair. As such, Defendant Mangum is not entitled to qualified immunity.

(e)     Defendant Mangum failed to take steps to deescalate, as required by Crisis Intervention Training (TCLOE #3841),  but chose to dangerously escalate the events leading to the death of Blair in light of Blair's known mental instability and failed to relate to a proper or conscious assessment of danger;

(f)     Defendant Mangum chose to dangerously escalate the events, in violation of Crisis Intervention Training (TCLOE #3841), leading to the death of Blair and should have known that he, Hartfield, and Moore could not continue to shock Blair with the taser, in violation of Fort Bend Sheriff Office Taser Policy and/or Use of Force Policy or that he could prepare to shoot Blair with his service gun or in fact shoot Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force, much less shooting him 11 times and kill him, without probable cause.

(g)     The number of tastings, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment,  were unnecessary, as well as Defendant Mangum's gun being drawn and pointed at Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, was objectively unnecessary and unconstitutional where (i) Blair had committed no crime at the time when he was approached by Defendants Mangum, Goodrich, Hartfield and Moore; (ii) where Blair remained behind a closed door, 10 – 12 feet away from Defendants, with at best an alleged pocket knife of 6 inches in length, which is not seen in the iPhone

recording of the events and posed no immediate threat to the officers and there were no other persons present; (iii) where Blair was not subject to arrest for any crime, was not actively resisting arrest, was not attempting to evade arrest and was not attempting to evade arrest by fleeing the scene, in contravention to his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(h)     On November 4, 2013,  Blair was both tased, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot,  in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law, in it was clear that excessive force violates the 4th Amendment unless the officer has probable cause to believe that Blair posed a threat of serious physical harm, either to the officer of to others. No reasonable officer, to include all the Defendant Mangum, would have believed that the use of a taser, the drawing of a service gun, the preparatory firing of a gun, and the shooting of Blair 11 times, was/were lawful or authorized conduct.

AA.     Blair, while in the fighting stance kicks the door closed. (04:50 mark)  Blair is alone in the bathroom, all officers are outside the bathroom, and all family are either in the living room or outside.

BB.     Again, while Crisis Intervention Training (TCLOE #3841), Defendants TCLOSE training, expressly provides that **where even Blair may be waiving his fists, or a knife or yelling**,  both deputies were required not to rush Blair **or crowd his personal space** but were <u>to remain non-confrontational</u>.   As such, the entry into the bathroom, the ordered tasing of Blair and the further escalation of events by both Defendants Mangum and Moore were in violation of their training, which establishes that Defendants were not to enter the bathroom or to become confrontational, Defendants Mangum and/or Moore – as objectively viewed – violated their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy and Use of Force, and the controlling law – which both officer's were aware.

CC.     At the 04:56 mark, Defendant Mangum, in the presence of Defendant Moore and Defendant Hartfield, further escalates the situation and says: 'don't do it, don't do it, I don't want to shoot you, do not do it man, I don't want to shoot you'.  (04:56 – 05:00 marks).  Defendant Mangum again continues to escalate the situation and says: 'I do not want to shoot you.'

DD.     While Crisis Intervention Training (TCLOE #3841) provides that for mentally ill persons:  'both deputies were required not to rush Blair **or crowd his personal space** but were <u>to remain non-confrontational'</u> Defendant Mangum, in the presence and assisted by Defendants Moore and Hartfield, kicks the door open and states the following: "hey, need another taser now Sonny". (05:02 – 05:03 marks)

EE.     At the 05:09 mark, Defendant Moore in violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and in violation of Fort Bend Sheriff Office Policy Use of Force, a the instruction of Defendant Mangum assents to tasing Blair.   Defendant Moore begins to tase Blair, who cannot be seen doing anything that constitutes fleeing, or attempting to escape.  The iPhone recording does not

show Blair to be coming toward or attacking any deputy and he does not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant  Tully Mangum, Defendant R. Hartfield, or to Defendant J. Moore, Jr., or to any other third party.  In fact, Blair objectively appears not to pose a significant threat of death or serious physical injury to anyone in the house, to include him – as viewed from the iPhone video. The absence of these factors precludes the use of both the taser, force and/or deadly force consistent with the TCLOSE training, Fort Bend Sheriff's Office Taser, and Use of Force, existing case law and Constitutional Law, precluded tasing and/or the threatened use of force which, Defendant Mangum – as witnessed and assisted by Defendants Moore – directed and Defendant Moore consented to. The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum and/or Moore – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which both officer's were aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, neither Defendant Mangum nor Defendant Moore are entitled to qualified immunity.

FF.    Defendant Mangum, with his gun in his right hand, uses his left hand to open the bathroom door.  (05:06 – 05:31 mark)  For a period of approximately 25 seconds, Blair is being tased.  At the 05:33 mark, Blair can be seen sitting across in the tub clearly.  Defendant Moore states in his affidavit that Blair is in the tub.  Blair is positioned as follows:  He in on his butt, laterally in the tub, with one in the tub and one leg out of the tub, leaning to Blair's left and the officer's/iPhone's right; his right elbow is pointed right and is parallel to the floor, his left elbow is pointed slightly down; Blair then moves to sit fully upright, both knees and legs are on the

outside of the tub – right hand can be seen with palm facing down and left hand with palm facing toward his body.  (05:33 mark).  Defendant Moore in his affidavit, made before he learned of the iPhone recording, falsely states that Blair is holding a pocket knife in his right hand.  The iPhone recording clearly shows no silver knife or any other knife in Blair's right hand.

GG.     From 05:33 to 06:24 marks, Defendant Moore tases Blair, a period of approximately 51 seconds.  At or near 06:24 mark, Defendant Mangum directs Defendant Moore to discontinue tasing Blair.  At the 06:25 mark, Deputy Mangum fully enters the bathroom and is standing over Blair. (06:29 mark).  Deputy Mangum – in his affidavit – represents that he does not fully enter the bathroom.  This is contradicted by the iPhone recording.

HH.     From 06:29 – 06:51 mark, Defendant Mangum directs Blair to drop the knife several times.  From 06:29 – 06:47 mark, Defendant Mangum is standing over Blair.  At 05:22 mark and again at 06:37 Defendant Hartfield comes back into the bathroom.  At 05:57 mark, Defendant Mangum says to Blair: 'drop the freaking knife.'  At 06:00 mark, a voice identified by decedent's sister as Blair's says: **"what fuckin' knife, what fuckin' knife."**  At 06:15 mark, Blair is seen on his back in the tub, kicking both his legs into the air as he is being tased.  From 06:29 – 06:51 marks, Blair is calm.  Defendant Mangum in his affidavit records that Blair is calm. At 06:45 mark, Defendant Moore turns off the radio.

II.      During the period Blair is in the tub, on his back – a period of approximately 32 seconds, Blair is on his back – knees up – in the bathroom in the tub, head and shoulder below rim level.

JJ.     For a period of about 32 seconds, while he is below rim level, his arms are restricted by the sides of the tub and no weapon/knife is visible in Blair's hands.

KK.    For a period of 32 seconds, with Blair laying on his back in the tub, Defendant Mangum directs that Blair drop the knife (which would – if there had been any knife in his possession – caused the knife to be dropped on Blair's chest) and approaches Blair in the tub.

LL.    Blair, for 32 seconds, lies motionless in the bathtub.

MM.    The iPhone recording shows that Defendant Mangum, under color of law, wearing his Fort Bend Uniform advanced fully into the bathroom – with his service gun drawn and pointed at Blair at the 6:32 mark of the digital recording.  However, in Defendant Mangum's affidavit he falsely represents the following:  "I went slightly into the bathroom and tried to get him to drop the knife which he was still holding in his hand."

NN.    For 32 seconds, Defendant Mangum – in Blair's "personal space" – returns to escalation. At the 06:54 mark, Defendant Mangum says: "let it go or we will shock you again." From 7:01 – 07:33 marks, Defendant Mangum says to Blair to drop the knife over and over again.  At the 7:08 mark, Defendant Moore reloads his taser.  At the 07:32 mark, Defendant Moore begins to tase Blair again.

OO.    For a period of 32 second, Defendant Magnum stands over Blair, directing him to drop an alleged knife, while Blair is on his back in the bathtub with his shoulders clearly encumbered by the bathtub sides and knees and legs clearly down.  He does not place a blanket or couch cushion on top of Blair – while the opportunity presents itself due to Blair's physically being restricted by the bathtub from certain movements, clearly incapable of charging Defendant Mangum, or anyone else.

PP.    From 6:30 to 7:32 marks of the digital recording, Defendant Mangum is speaking with Blair, while standing over Blair.  At 07:32 Defendant Mangum begins to back up and says to Defendant Moore, who is standing outside the bathroom door:  "I need another taser" and the

recording audibly records Blair being tased.  Deputy Magnum steps fully out of the bathroom, first to the bathroom doorway at the 07:36 mark.

RR.     At the 07:36 mark, Blair can be seen standing slowly, as he is being tased.  No command is directed to him that lay down – he simply stands, he does not charge, turn to his right or left.  Between 07:36 – 07:38, Blair can be seen standing in a jerking motion as he is audibly being tasered.  His head, body, shoulders, and stomach are facing to the wall in the direction of the shower head.  Defendant Mangum, at the 07:38 mark is now fully and clearly in the bathroom located across from the bathroom a distance of 10 – 12 feet.  Blair is still facing the showerhead.  Defendant Moore, in his affidavit, correctly records that Defendant Mangum backs out of the bathroom.  But, falsely states that Blair stands quickly and exits the tub.

SS.     At the 7:35 mark of the digital recording, Blair begins to stand, but is still in the bathtub and being tased.  Defendant Magnum, in his affidavit, represents that Blair 'begins to stand quickly and pull off tasers and to quickly move toward him with the knife extended towards him.'  The iPhone recording does not show that Blair moved quick, move toward him, had a knife or extended a knife towards Defendant Magnum.  Defendant Mangum is lying.

TT.     Defendant Mangum is 10 – 12 feet away from Blair at 07:35 mark.

UU.     Defendant Mangum continues to shout that he needs another taser.

VV.     Two (2) seconds later, at the 7:37 mark of the digital recording, with Blair still in the bathtub, Defendant Mangum 10 – 12 feet away, and  Blair audibly being tasered by Defendant Moore – in his capacity as a Fort Bend County Sheriff Deputy – Defendant Mangum fires his weapon 11 times at Blair.  Defendant Mangum, in his affidavit states at this point that he is attempting to retreat, that Blair is moving fast, that Blair is almost upon him and that when he shoots Blair, he is only 'a couple of feet away.'

WW.   At the point when Blair was shot, he was seized by deadly force by Defendant Mangum, 07:38 mark, Defendant Mangum is 10 – 12 feet away from Blair, who is still standing in the bathtub.  Defendant Moore is in the hallway to the left of the bathroom door, out of camera range, continuing to tase Blair.

XX.   Upon the first or second bullet striking Blair, Blair falls forward, with his head striking close to the sink area – still fully in the bathroom, feet next to the tub, face down. Defendant Mangum continued to fire at Blair while he was face down on the bathroom floor.

YY.   The iPhone digital recording demonstrates that Defendants Moore and Mangum use of force – taser, drawing of weapon and discharge of weapon - were done in clear violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment in that:  (1) the use of the taser was not done for purposes of self defense; (2) in that the use of the taser was not done in defense of a third person; (3) was not done to prevent the escape of Blair who was under arrest from custody (as Blair had never been placed under arrest); (4) was not **used to effect an arrest** of Blair or **to prevent the threatened use of deadly force**; and/or (5) was not **used to control a prisoner** (as Blair was not a prisoner) who poses a threat to a employee or to any other person.

ZZ.   The iPhone digital recording demonstrates that Defendants Moore and Mangum use of force – taser, drawing of weapon and discharge of weapon - were done in clear violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment in that:  (1) the use of the taser was not done for purposes of self defense; (2) in that the use of the taser was not done in defense of a third person; (3) was not done to prevent the escape of Blair who was under arrest from custody (as Blair had never been placed under arrest); (4) was not **used to effect an arrest** of Blair or **to prevent the threatened use of deadly force**;

and/or (5) was not **used to control a prisoner** (as Blair was not a prisoner) who poses a threat to a employee or to any other person.

AAA.  The iPhone digital recording demonstrates that Defendants Moore and Mangum use of force – drawing of weapon and discharge of weapon violates Fort Bend Sheriff's Office General Order 12  and Chapter 9 of the Texas Penal Code because Conduct was unjustified where:  (1)  it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum, as such Mangum could not have  reasonably believes the threatened use of deadly force or the use of deadly force was immediately necessary to avoid imminent harm; (2)  it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum  as such there could be no desirability and/or urgency of avoiding the harm which clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct;  and (3) it was objectively apparent that (a) there was no weapon in the possession of Blair, and that (b) Blair never charged or approached Moore, Hartfield and/or Mangum, no legislative purpose to permits  the justification claimed for the conduct because such does not otherwise plainly appear.

BBB.  Despite there being no objective evidence of a crime having been committed by Blair, or that fact that Blair cannot be seen doing anything that constitutes fleeing, or attempting to escape, he is not coming toward or attacking any deputy and he does not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant T. Mangum or Defendant J. Moore, Jr., or to any other third party , Defendant Mangum  shot Blair, who was merely standing and being tased while in a bathtub, from a distance of 10 – 12 feet away, shooting Blair, who was in a bathtub while he was located in the across the bathroom bedroom a

distance of 10 – 12 feet away.  Defendant Moore did not  oppose the use of deadly force by Defendant Mangum  against Blair who is did not charge Defendant Mangum or Defendant Moore, or Defendant Hartfield, did not extend a knife in the direction of Defendant Mangum or Defendant Moore, or Defendant Hartfield, was unarmed, not charge with a felony, not charged with a misdemeanor, not fleeing, not attempting to escape, and did not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant Mangum or Defendant Moore, or Defendant Hartfield.   Blair cannot be seen doing anything permitting the use of threatened or deadly force by Defendants T. Mangum, R. Hartfield, and/or J. Moore, Jr. in violation of clearly settled law set forth in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 l. Ed. 2d 1 (1985), which provides: 'deadly force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' id., pg. 3.

(1)     Defendant Mangum – under color of law – a sheriff deputy, failed and did not act as a reasonably prudent officer under the totality of the circumstances, as set forth in directing that Blair be tased, threatening deadly force, pointing his service gun at Blair and threatening to use deadly force, the use of deadly force and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum  – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(2)      Defendant Mangum – under color of law – a sheriff deputy, acted without probable cause, in violation of his TCLOSE training, in violation of the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force Policy and Use of Deadly Force Policy, the controlling law and controlling Constitutional Law, in directing that Blair be tased, in un-holstering, pointing his service gun at Blair and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(3)      In addition, Defendant Mangum used excessive force and is liable under section 1983, to wit:

(a)      In his tasing threatening to shoot and shooting of Blair;

(b)      Defendant Mangum knew or reasonably should have known he was violating the rights of Blair, his TCLOSE training, the polices of Fort Bend Sheriff's Office regarding taser use, use of force and use of deadly force, as well as Blair's constitutional right not to be subjected to excessive force when he drew his weapon, pointed his weapon at Blair and ultimately discharged his weapon killing Blair in absence of the factors required to do same, as set forth herein,  the absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum Moore – as objectively viewed – would be authorized in light of

their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity;

(c)      Defendant Mangum failed to take steps to deescalate the situation in light of Blair's known mental instability, as required by his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity; and,

(d)      Defendant Mangum knew or reasonably should have known he was violating the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law, the rights of Blair as clearly established by case law and the United States Constitution, not to be subjected to excessive force when he tased Blair, brandished his fire arm, shot Blair and shot Blair to death (killing Blair), without probable cause, in contravention to his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair. As such, Defendant Mangum is not entitled to qualified immunity.

(e)    Defendant Mangum failed to take steps to deescalate, as required by Crisis Intervention Training (TCLOE #3841),  but chose to dangerously escalate the events leading to the death of Blair in light of Blair's known mental instability and failed to relate to a proper or conscious assessment of danger;

(f)    Defendant Mangum chose to dangerously escalate the events, in violation of Crisis Intervention Training (TCLOE #3841), leading to the death of Blair and should have known that he, Hartfield, and Moore could not continue to shock Blair with the taser, in violation of Fort Bend Sheriff Office Taser Policy and/or Use of Force Policy or that he could prepare to shoot Blair with his service gun or in fact shoot Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force, much less shooting him 11 times and kill him, without probable cause.

(g)    The number of tasings, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment,  were unnecessary, as well as Defendant Mangum's gun being drawn and pointed at Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, was objectively unnecessary and unconstitutional where (i) Blair had committed no crime at the time when he was approached by Defendants Mangum,  Hartfield and Moore; (ii) where Blair remained in the bathtub, 10 – 12 feet away from Defendant Mangum and Defendant Moore, with at best an alleged pocket knife of 6 inches in length, which is not seen in the iPhone recording of the events and posed no immediate threat to the officers and there were no other persons present; (iii) where Blair was not subject to arrest for any crime, was not actively resisting arrest, was not attempting to evade arrest and was not

attempting to evade arrest by fleeing the scene, in contravention to his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(h)     On November 4, 2013,  Blair was both tased, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot,  in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law, in it was clear that excessive force violates the 4th Amendment unless the officer has probable cause to believe that Blair posed a threat of serious physical harm, either to the officer of to others. No reasonable officer, to include all the Defendant Mangum, would have believed that the use of a taser, the drawing of a service gun, the preparatory firing of a gun, and the shooting of Blair 11 times, was/were lawful or authorized conduct.

CCC.  Defendant Mangum shoots Blair 11 times: six times in the head, in the thigh and one bullet in his neck, while he had committed no crime, he is being tased for reasons unknown, is being provoked and agitated by the Defendants Mangum, Hartfield, and Moore.

DDD.  Blair, at the time he was shot, never attacks, charges, approaches or comes toward Defendants Mangum, Hartfield and/or Moore, as represented by  Defendant Mangum in his affidavit, or Maj. Chad Norvell Fort Bend County Sheriff's Department as justification for shooting Blair, made by him to the news-station November 5, 2013.

EEE.   In addition to the false statements, misrepresentations and lies of Defendant Mangum, Hartfield and Moore, Defendant alters the crime scene.   At the 07:48 mark, after Defendant Mangum shoots Blair, he reenters the bathroom and moves the body forward a distance of 18 inches to two feet and it is believed plants a silver pocket knife near the hand of Blair.

FFF.   When Blair falls, if he had a knife, it would have been near his hand upon falling. When his body is moved forward, for reasons unknown, the knife would not have move forward with.   The knife, in all pictures – after the body is moved 18 inches to 2 feet forward – is located near Blair's hand.   This is not possible given the fact that both Defendant Mangum and Defendant Moore admit that Defendant Mangum pulls Blair's body forward into the hallway and then places handcuffs on the dead body.   As such, not only was the crime scene altered the position of the body, to specifically include arms and knife were altered such that Defendant Mangum's assertion, but for the existence of the iPhone recording, would have made it difficult to rebut Defendant Mangum's assertion of self-defense.

GGG.   As viewed from the iPhone recording, none of the Defendants, Mangum, Hartfield, and/or Moore, were touched, let alone struck by Blair.

HHH.   As viewed from the iPhone recording, none of the Defendants, Mangum, Hartfield, and/or Moore suffered any injury caused by Blair.

III.   As viewed from the iPhone recording, Blair did not ever touch Defendants, Mangum, Hartfield, and/or Moore.   As viewed from the iPhone recording, Blair dies as a result of the gun shots he suffered at the hand of Defendant Mangum and the indifference of Defendants Hartfield and Moore.

JJJ.     As viewed from the iPhone recording, at no point on November 4, 2013 did Blair attack, come at or charge Defendant Mangum, or Defendants Hartfield, and Moore.

KKK.   As viewed from the iPhone recording, at no point on November 4, 2013, did Blair exhibit a knife towards or in the direction of Defendant Mangum, or Defendants Hartfield and Moore.

LLL.    As viewed from the iPhone recording, the actions of Defendant Mangum, and/or Defendants Hartfield, and Moore foreseeably acted to escalate the situation and led to the wrongful death of Blair.   As viewed from the iPhone recording, the actions of Defendant Mangum, and/or Defendants Hartfield and Moore, caused Michael Blair to become more and more agitated and confused.

MMM. As viewed from the iPhone recording, after only approximately 7 minutes from the time the Defendants come to the house and 4 minutes after tasing Michael Blair, Defendant Mangum drew his service gun, and fired his weapon, who  - while standing in the bathtub  - appeared to be unarmed, not fleeing not attempting to escape, and did not objectively appear to poses a significant threat of death or serious physical injury (e.g., not coming toward) to Defendant Mangum or to Defendants Hartfield and Moore or to anyone else.

NNN.   As viewed from the iPhone recording, while Michael Blair was in the bathtub with the palms of his hands visible and empty were seen, or should have been seen, by Defendant Mangum.  As viewed from the iPhone recording, no knife could be observed.

MMM. As viewed from the iPhone recording, shortly before Blair was shot, he was being tasered, at the request of Defendant Mangum, the only thing Blair was observed to do was to stand.  As viewed from the iPhone recording, no instruction had been given for him to remain lying down.

NNN.        As viewed from the iPhone recording, Defendant Mangum, suddenly, without any provocation or any aggressive actions by Blair to any of the Defendants, Defendant Mangum opened fire from a distance of about 10 – 12 feet away, shooting Michael Blair no less than eleven (11) times.

OOO.        As viewed from the iPhone recording, Defendant Mangum continued firing at Blair, even after Blair was immobilized and incapable of injuring or harming himself or anyone.

PPP.        As viewed from the iPhone recording, Blair was shot execution style by Defendant Mangum while Blair, while being observed by  either  Defendant Moore, at such time as he presented no risk of bodily harm to Defendants Hartfield, Moore and/or Mangum, under circumstances in which physical force, much less deadly force, was not warranted.

QQQ.        As viewed from the iPhone recording, even while Michael Blair was lying on the floor dead, Defendant Mangum continued to shoot Blair, under circumstances where any reasonable person and/or officer/deputy would have known that Michael Blair could not possibly harm anyone.

RRR.   As viewed from the iPhone recording, Plaintiff would show that Defendant Mangum engaged and used excessive force, including deadly force, under circumstances where such force is unwarranted, illegal and unconstitutional.

SSS.   As viewed from the iPhone recording, under the doctrine of Bystander Liability/Duty to Intervene, Defendants Hartfield and Moore were aware that Defendant Mangum was in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot,  in violation of Fort Bend Sheriff Office Policy Use of Force and Use of

Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law, engaged in unlawful excessive force and engaged in a conspiracy with Defendants Moore and/or Hartfield in which they actively concealed information and evidence, destroyed, covered up, and fabricated information and evidence in order to make the shooting of Michael Blair appear to be a justifiable use of deadly force by Defendant Mangum.

TTT.   Michael Blair was wrongfully seized and wrongfully shot eleven times and shot with a taser about three times resulting in his death.

UUU.     Michael Blair's act of being locked and/or barricaded in a bathroom is not a crime, much less a violent crime; Michael Blair's alleged attempt to commit suicide in the bathroom is also not a crime; and even assuming Michael Blair was in possession of a knife, the possession of a knife in one's own residence does not constitute a crime.

VVV.     The actions by Defendant Mangum constitute an unlawful and unconstitutional seizing and use of excessive force in violation of the 4th and 14th Amendments of the U.S. Constitution.

WWW.     The actions by Defendants Hartfield and Moore constitute an unlawful and unconstitutional seizing and use of excessive force in violation of the 4th and 14th Amendments of the U.S. Constitution.

XXX.   Defendant Mangum is  without qualified immunity, in that he did not objectively act as a reasonably competent officer when directed Blair to be tasered, when he drew his weapon on Blair and when he shot Michael Blair  at least eleven times to death.

YYY.   Defendants Hartfield and Moore are without qualified immunity, in that each did not objectively act as a reasonably competent officer to protect a Blair from Defendant Mangum's use of excessive force when he shot Michael Blair at least eleven times to death, and

did not act as reasonably prudent deputies when they failed to prevent Defendant Mangum from tasering Blair, when they agree and tasered Blair, when they failed to prevent Defendant Mangum from threatening the use of deadly force, when they failed to prevent Defendant Mangum's use of deadly force and when they conspired with Defendant Mangum and each other to cover up each's violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law.

ZZZ.   A reasonably prudent officer/deputy should have known that officers cannot act in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law and then resort to deadly force unless they "have probable cause…to believe that  Blair [has committed a felony and] poses a threat to the safety of the officers or a danger to the community if left at large, to include: that Blair was not fleeing that Blair was not attempting to escape, and that Blair did not objectively appear to poses a significant threat of death or serious physical injury to any Defendant."

AAAA.        As such, a reasonably prudent officer/deputy should have known that Blair did not pose a threat to the safety of any of the officers and/or to the surrounding community, since the sole threat, if any,  Blair posed was to himself.

BBBB.No reasonable officer in the position of Defendant Mangum where Blair had not committed a felony and posed no threat to the safety of the officers or a danger to the community

if left at large, and was not fleeing, was not attempting to escape, and did not objectively appear to poses a significant threat of death or serious physical injury to any Defendant would have resorted to deadly force as did Defendant Mangum.

      CCCC. No reasonable officer in the position of Defendants Hartfield and Moore, having observed the conduct, to wit:  violation of Crisis Intervention Training (TCLOE #3841) and violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and violation of  Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and violation of controlling law, as such actions of Defendant Mangum, Defendant Moore and Defendant Hartfield, and would not failed to intervene to stop the actions of Defendant Mangum, Defendant Moore and/or Defendant Hartfield where Blair had not committed a felony and posed no threat to the safety of the officers or a danger to the community if left at large, and was not fleeing, was not attempting to escape, and did not objectively appear to poses a significant threat of death or serious physical injury to any Defendant.

      DDDD. Michael Blair was deprived of his liberty, his life, without benefit of trial in clear and direct violation of his constitutionally-protected right to due process.

      CCCC. The aforementioned actions of Defendant Mangum were the proximate cause of severe injury and death of Michael Blair, and for which Plaintiffs sue.

      DDDD. The aforementioned actions of Defendants Hartfield and Moore were a contributing factor to the severe injury and death of Michael Blair, and for which Plaintiffs sue.

## VII.  BYSTANDER DOCTRINE

      A.    **Bystander Liability/Duty to Intervene**.    Defendants Hartfield and Moore – sheriff deputies, acting under color of law - were present and carried out the unlawful actions of

Defendant Mangum, to include tasing Blair, threatened use of force, threatened use of deadly force and use of deadly force resulting in the death of Blair.

B.      Defendants Hartfield and Moore were aware Defendant Mangum's conduct, to wit: violation of Crisis Intervention Training (TCLOE #3841) and violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and violation of  Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and violation of controlling law, as well as their participation in same, but failed and did not take reasonable measures, and failed to protect Blair from Defendant Mangum's use of excessive force, the actions Defendants Hartfield and Moore.

C.      Defendants Hartfield and Moore were aware their respective conduct, to wit: violation of Crisis Intervention Training (TCLOE #3841) and violation of Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and violation of  Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and violation of controlling law, as well as their participation in same, but failed and did not take reasonable measures, and failed to protect Blair from the other's actions in concert with Defendant Mangum's use of excessive force.

D.      The conduct asserted herein constitutes liability asserted under section 1983, to wit:

(a)      Despite there being no objective evidence of a crime having been committed by Blair, or that fact that Blair cannot be seen doing anything that constitutes fleeing, or attempting to escape, he is not coming toward or attacking any deputy and he does not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant T. Mangum or

Defendant J. Moore, Jr., or to any other third party , Defendant Mangum  shot Blair, who was merely standing and being tased while in a bathtub, from a distance of 10 – 12 feet away, shooting Blair, who was in a bathtub while he was located in the across the bathroom bedroom a distance of 10 – 12 feet away.  Defendant Moore did not  oppose the use of deadly force by Defendant Mangum  against Blair who is did not charge Defendant Mangum or Defendant Moore, or Defendant Hartfield, did not extend a knife in the direction of Defendant Mangum or Defendant Moore, or Defendant Hartfield, was unarmed, not charge with a felony, not charged with a misdemeanor, not fleeing, not attempting to escape, and did not objectively appear to pose a significant threat of death or serious physical injury into to  Defendant Mangum or Defendant Moore, or Defendant Hartfield.  Blair cannot be seen doing anything permitting the use of threatened or deadly force by Defendants T. Mangum, R. Hartfield, and/or J. Moore, Jr. in violation of clearly settled law set forth in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 l. Ed. 2d 1 (1985), which provides: 'deadly force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others' id., pg. 3.

(b)     Defendant Mangum – under color of law – a sheriff deputy, failed and did not act as a reasonably prudent officer under the totality of the circumstances, as set forth in directing that Blair be tased, threatening deadly force, pointing his service gun at Blair and threatening to use deadly force, the use of deadly force and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendants Mangum – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force,

and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(c)     Defendant Mangum – under color of law – a sheriff deputy, acted without probable cause, in violation of his TCLOSE training, in violation of the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force Policy and Use of Deadly Force Policy, the controlling law and controlling Constitutional Law, in directing that Blair be tased, in un-holstering, pointing his service gun at Blair and in his seizing Blair when he shot Blair and ultimately shoots Blair to death – shooting Blair 11 times.  The absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(d)     In addition, Defendant Mangum used excessive force and is liable under section 1983, to wit:

(i)     In his tasing threatening to shoot and shooting of Blair;

(ii)     Defendant Mangum knew or reasonably should have known he was violating the rights of Blair, his TCLOSE training, the polices of Fort Bend Sheriff's Office regarding taser use, use of force and use of deadly force, as well as Blair's constitutional right not to be subjected to excessive force when he drew his weapon, pointed his weapon at Blair and ultimately discharged his weapon killing Blair in absence

of the factors required to do same, as set forth herein,  the absence of these factors from the iPhone recording demonstrates that no reasonable deputy/officer in the position of Defendant Mangum Moore – as objectively viewed – would be authorized in light of their TCLOSE training, the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity;

(iii)    Defendant Mangum failed to take steps to deescalate the situation in light of Blair's known mental instability, as required by his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity; and,

(iv)    Defendant Mangum knew or reasonably should have known he was violating the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law, the rights of Blair as clearly established by case law and the United States Constitution, not to be subjected to excessive force when he tased Blair, brandished his fire arm, shot Blair and shot Blair to death (killing Blair), without probable cause, in contravention to his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in

attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair. As such, Defendant Mangum is not entitled to qualified immunity.

(e)     Defendant Mangum failed to take steps to deescalate, as required by Crisis Intervention Training (TCLOE #3841),  but chose to dangerously escalate the events leading to the death of Blair in light of Blair's known mental instability and failed to relate to a proper or conscious assessment of danger;

(f)     Defendant Mangum chose to dangerously escalate the events, in violation of Crisis Intervention Training (TCLOE #3841), leading to the death of Blair and should have known that he, Hartfield, and Moore could not continue to shock Blair with the taser, in violation of Fort Bend Sheriff Office Taser Policy and/or Use of Force Policy or that he could prepare to shoot Blair with his service gun or in fact shoot Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force, much less shooting him 11 times and kill him, without probable cause.

(g)     The number of tasings, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment,  were unnecessary, as well as Defendant Mangum's gun being drawn and pointed at Blair, in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, was objectively unnecessary and unconstitutional where (i) Blair had committed no crime at the time when he was approached by Defendants Mangum,  Hartfield and Moore; (ii) where Blair remained in the bathtub, 10 – 12 feet away from Defendant Mangum and Defendant Moore, with at best an alleged pocket knife of 6 inches in length, which is not seen in the iPhone recording of the events and posed no immediate threat to the officers and there were no other persons present; (iii) where Blair was not subject to arrest for any crime, was not

actively resisting arrest, was not attempting to evade arrest and was not attempting to evade arrest by fleeing the scene, in contravention to his Crisis Intervention Training (TCLOE #3841), and failed to relate to a proper or conscious assessment of danger as required by the policies of the Fort Bend Sheriff's Office Taser Policy, Use of Force and Use of Deadly Force, and the controlling law – which he was aware - would be justified in attempting to arrest, seize, tase, present deadly force and/or use deadly force with Blair.  As such, Defendant Mangum is not entitled to qualified immunity.

(h)     On November 4, 2013,  Blair was both tased, in violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and shot,  in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law, in it was clear that excessive force violates the 4th Amendment unless the officer has probable cause to believe that Blair posed a threat of serious physical harm, either to the officer of to others.  No reasonable officer, to include all the Defendant Mangum, would have believed that the use of a taser, the drawing of a service gun, the preparatory firing of a gun, and the shooting of Blair 11 times, was/were lawful or authorized conduct.

(i)     Defendants Hartfield and Moore are shown on the video as being present during the entire events from arrival, tasing, and shooting of Blair;

(j)     Defendants Hartfield and Moore knew, or reasonably should have known that Defendant Mangum was violating the rights of Blair not to be subjected to excessive force when they did not draw their guns during the same period that Defendant Mangum drew his gun and

pointed it at Blair, in fact Defendant Hartfield or Moore is observed as being rather calm and nonchalant;

(j)       Defendants Hartfield and Moore   being present had opportunity and duty to prevent the violation, they failed to take steps to deescalate the situation in light of Blair's known mental instability, failed to relate to a proper or conscious assessment of danger and failed to respond to Defendant Mangum's behavior/conduct; and,

(j)       Defendants Hartfield and Moore – sheriff deputies, chose not to act to either protect Blair or to stop Defendant Mangum, but chose to watch the situation dangerously escalate and in fact participated in the escalation – having removed the family members, they assured that no one else would be present to protect Blair and should have known that they could not continue to shock Blair with the taser or to prepare to shoot Blair with a gun, much less 11 times.

(k)       The number of tasings done were unnecessary, as well as Defendant Mangum's gun being drawn and pointed at Blair was objectively unnecessary and unconstitutional where (i) Blair had committed no crime at the time when he was approached by Defendants Mangum, Hartfield and Moore; (ii) when Blair was behind the bathroom door, out of sight of all Defendants  - even if there was an alleged kitchen knife – the Defendants, with Blair behind a closed door, 6 – 8 feet away from Blair, with at best an alleged kitchen blade/knife (of unknown length and/or description)  from behind a closed door – posed no immediate threat to the officers and there were no other persons/civilians present; (iii) where Blair was not subject to arrest for any crime, was not actively resisting arrest, was not attempting to evade arrest and was not attempting to evade arrest by fleeing the scene.

(l)      On November 4, 2013, when Blair was both tased and shot, and ultimately shot to death by Mangum, it was clear that excessive force violates the 4th Amendment unless the officer has probable cause to believe that Blair poses a threat of serious physical harm, either to the officer of to others.  There was (1) no immediate threat of physical harm present – in fact, even when the bathroom door was open, the Defendants – except for a brief period where two officers entry the bathroom were ever close to Blair as Blair never advanced beyond the bathroom sink and remained in the bathtub, where he was shot and eventually killed by Mangum.

## VIII. CIVIL RIGHTS VIOLATIONS

A.      Plaintiff incorporates by reference all factual allegations in Paragraph IV through VII above, as though fully set forth here.

(1)      The conduct of Defendant Mangum in ordering the tasering of Blair, in drawing his weapon on Blair, in threatening Blair with force, in threatening Blair with deadly force, and in the use of excessive force, constituted a seizure of Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(2)      The conduct of Defendant Mangum in ordering the tasering of Blair, in drawing his weapon on Blair, in threatening Blair with force, in threatening Blair with deadly force, and in the use of excessive force, constituted an unlawful restraint  of  Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so,

under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(3)     The conduct of Defendant Hartfield in the tasering of Blair, and in failing to oppose and restrict Defendant Mangum's drawing his weapon on Blair, in the threatening Blair with force, in the threatening Blair with deadly force, and in the use of excessive force, constituted a seizure of Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(4)     The conduct of Defendant Moore in the tasering of Blair, and in failing to oppose and restrict Defendant Mangum's drawing his weapon on Blair, in the threatening Blair with force, in the threatening Blair with deadly force, and in the use of excessive force, constituted a seizure of Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(5)     The conduct of Defendant Hartfield  in the tasering of Blair, in failing to oppose and restrict Defendant Mangum's drawing his weapon on Blair, in the threatening Blair with force, in the threatening Blair with deadly force, and in the use of excessive force, constituted an unlawful restraint  of  Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(6)     The conduct of Defendant Moore  in the tasering of Blair, in failing to oppose and restrict Defendant Mangum's drawing his weapon on Blair, in the threatening Blair with force, in the threatening Blair with deadly force, and in the use of excessive force, constituted an unlawful restraint  of  Blair in violation of the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(7a)     Each of the Defendants – Defendant Mangum, Defendant Hartfield and Defendant Moore, in Paragraph IV (a) -(DDDD), acting in their individual capacities and under color of law, conspired together and reached mutual understanding to engage in a course of conduct, and otherwise conspired amount and between themselves, to deprive Blair of his constitutional right, including his right to be free from the use of excessive force, to be free from unreasonable arrest and seizure and to due process of law.  Defendants conspiracies deprived Blair of rights protected by the 4th Amendment and the 14th Amendment of the United States constitution pursuant to 42 U.S.C. §1983.

(7b)     Each of the Defendants – Defendant Mangum, Defendant Hartfield and Defendant Moore, in Paragraph IV (a) - (DDDD), caused and is legally responsible for the, incident, unlawful conduct, injuries, and damages alleged by personally participating in the unlawful conduct, or acting jointly or conspiring with others to act, by authorizing or allowing, explicitly or implicitly, policies, plans, customs, practices, actions, or omissions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct, by failing or refusing to initiate and/or participate in the unlawful conduct, and thus constituting deliberate indifference to Blair's rights, and by ratifying the unlawful conduct that occurred by agents and officers under

their direction and control, including failing to take remedial or disciplinary action, to include reporting such conduct and/or taking steps to provide false reports and/or statements and/or affidavits, while each Defendant was acting under color of authority and/or color of state law at all relevant times.

(7c)    The conspiracy resulted in violation of Blair's constitutionally protected rights.

(7d)    If Plaintiff prevails, Plaintiff's attorneys are entitled to an award of attorneys' fees pursuant to 42 U.S.C.A. § 1988.

(8a)    The conduct of Defendants Mangum, Hartfield and Moore,  in the tasering of Blair, and in failing to oppose and restrict Defendant Mangum's drawing his weapon on Blair, in the threatening Blair with force, in the threatening Blair with deadly force, and in the use of excessive force, constituted a seizure of Blair violated Blair's right to be free from unreasonable and excessive use of force as guaranteed by the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983, which conduct constituted assault, battery and seizure without probable cause to do so, under color of law, and occurred while he was performing his duties with the Fort Bend Sheriff's Office.

(8b)    The misconduct of Defendants Mangum, Hartfield and Moore resulting in violation of Blair's right to be free from the unreasonable and excessive use of force directly and proximately caused Blair to suffer injury including bodily injury, pain and suffering, shock, extreme emotional distress and death.

(9)    Defendants' misconduct alleged above violated Blair's rights to be free from unreasonable and excessive use of force as guaranteed by the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983.

(10)   Defendants' misconduct directly and proximately caused the death of Blair, to include emotional pain and suffering, shock, and extreme distress.

B.   Plaintiff incorporate by reference all factual allegations in Paragraph IV through VII above, as though fully set forth here.

(1)   Defendants' misconduct alleged above violated Blair's rights to be free from unreasonable seizure as guaranteed by the 4th Amendment and the 14th Amendment of the United States constitution  pursuant to 42 U.S.C. §1983.

(2)   Defendants' misconduct directly and proximately caused the death of Blair, to include emotional pain and suffering, shock, and extreme distress.

C.   Plaintiff incorporates by reference all factual allegations in Paragraph IV through VII above, as though fully set forth here.

(1)   Defendants' misconduct alleged above violated Blair's right to life and liberty and was denied his rights to life and liberty without due process of law as guaranteed to him under the 14th Amendment to the U.S. Constitution by repeatedly violation of Crisis Intervention Training (TCLOE #3841) and Fort Bend Sheriff's Office General Order #11, Use of Force, Appendix 5 Taser X-26 Usage, B Deployment, and in violation of Fort Bend Sheriff Office Policy Use of Force and Use of Deadly Force General Order #12, Use of Force and Use of Deadly Force, and the controlling law, in it was clear that excessive force violates the 4th Amendment firing upon Michael Blair, a subject which the police officers knew, or reasonably should have known, wanted only to harm himself and did not pose a risk of harm to the police or others.

(2)   Defendants' misconduct directly and proximately caused the death of Blair, to include emotional pain and suffering, shock, and extreme distress.

## IX.   DAMAGES

Plaintiffs request the following relief:

1.        Compensatory general damages against each Defendant, jointly and severally, in

the amount proven at trial:

A.        As a wrongful death beneficiaries, Plaintiff seeks actual damages, both general

and special, for the loss of his child, Michael Blair, for the following specific elements of

damages:

        1.        Pecuniary Loss resulting from the death of Michael Blair including, but
not limited to, the care, maintenance, support, services, education, advice, counsel, and
reasonable contributions of a pecuniary value, excluding loss of inheritance that the
surviving family would have received from Michael Blair, had he lived.

        2.        Termination of the Family Relationship:  The positive benefits flowing
from the love, support, companionship, and society that these Plaintiff would, in
reasonable probability, have received from Michael Blair, had he lived.

        3.        Mental Anguish suffered by the surviving family as a result of the death of
Michael Blair including, but not limited to, the emotional pain, torment, and suffering
that Plaintiff, would, in reasonable probability, experience from the death of Michael
Blair.

        4.        Loss of Inheritance:  The earnings, if any, of the decedent in excess of the
amount they would have used for the support of themselves and their families, and which
in reasonable probability would have been added to their estates and left to Plaintiff at
their natural death had he lived.

2.        Compensatory special damages including, but not limited to funeral expenses;

B.        As survivors and representatives of the Estate of Michael Blair, Plaintiff seek

actual damages, both general and special, which Michael Blair would have been entitled to

receive, had he survived the incident forming the basis of this suit, for the following specific

elements of damages:

        1.        Physical pain sustained by Michael Blair from the time of the incident until his
death;

2.      Mental anguish sustained by Michael Blair from the time of the incident until his death;

3.      Reasonable and necessary medical expenses incurred by Michael Blair from the time of the incident until the time of his death; and

4.      Reasonable and necessary funeral and burial expenses.

5.      Plaintiff seek to recover all costs, expenses, expert fees including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas/U.S. Supreme Court, as the Court deems equitable and just.

**Punitive Damages**

6.      (a)      Blair's death resulted from the joint and several acts of Defendants for which Plaintiff seeks punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct;

(b)      Plaintiff asserts that the death of Blair was the result of Defendants Mangum, Hartfield, and Moore, jointly and severally, that the death and harm suffered was the result of Defendants' conduct motivated by evil motive or intent, or done recklessly or with callous indifference to the federally protected rights of Blair, and hereby entitles Plaintiff to punitive/exemplary damages.

7.      Costs of suit;

8.      Reasonable attorney fees as otherwise authorized by statute or law;

9.      Pre and post judgment interest as permitted by law; and,

10.      Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

## X.  JURY REQUEST

Plaintiff respectfully demand a trial by jury.

## XII.  PRAYER

**WHEREFORE,  PREMISES  CONSIDERED**, Plaintiff  KIMBERLY  BLAIR

OLANIYI and The Estate of Michael Blair, respectfully pray that Defendants Mangum, Moore,

and Hartfield—Sheriff Deputies for Fort Bend County - be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiff and against Defendants, both jointly and severally, for all damages requested herein, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**STERN LAW GROUP**

*/s/ Joseph R. Corteguera*
**JOSEPH R. CORTEGUERA**
SBN:  00787291
Fed ID No. 28249
**JEFFREY M. STERN**
SBN: 19175660
4909 Bissonnet St., Suite 100
Bellaire, Texas  77401
713/661-9900
713/666-5922 Facsimile
E-Mail:  jcorteguera@stern-lawgroup.com

*Attorneys for Kimberly Blair Olaniyi*